UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GRANT TAYLOR, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. |
| | **CLASS ACTION** |
| Plaintiff, ) ) | |
| vs. ) ) ) | |
| FLOOR & DECOR HOLDINGS, INC., THOMAS V. TAYLOR, JR., TREVOR S. LANG, ARES CORPORATE OPPORTUNITIES FUND III, L.P., FS CAPITAL PARTNERS VI, LLC, FS EQUITY PARTNERS VI, L.P., FS AFFILIATES VI, L.P. and FREEMAN SPOGLI MANAGEMENT CO., L.P., ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |
| ) | **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

## SUMMARY OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased the common stock of Floor & Decor Holdings, Inc. ("Floor & Decor" or the "Company") between May 23, 2018 and August 1, 2018, inclusive (the "Class Period").  The defendants are Floor & Decor, the Company's President and Chief Executive Officer ("CEO"), Thomas V. Taylor, Jr. ("Taylor"), its Chief Financial Officer ("CFO"), Trevor S. Lang ("Lang"), and certain of the Company's controlling shareholders.  Plaintiff seeks remedies for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## INTRODUCTION AND BACKGROUND

2.      Floor & Decor describes itself as a high-growth differentiated multi-channel specialty retailer of hard surface flooring and related accessories, with warehouse-format stores across 21 states.  The Company purports to offer the industry's broadest in-stock assortment of tile, wood, laminate and natural stone flooring, along with decorative and installation accessories, at everyday low prices, which positions it as the one-stop destination for its customers' entire hard surface flooring needs.  One of the Company's key differentiating factors is its large warehouse-format stores, which carry a high inventory of hard surface flooring and

tools and accessories in order to offer customers immediate availability on everything needed to complete entire flooring or remodeling projects.

3.     The Company conducted its initial public offering ("IPO") on May 2, 2017, raising gross proceeds of $213 million.  Floor & Decor stock trades on the New York Stock Exchange under Ticker symbol "FND."  The Company, since its IPO, has reported strong sales growth and product demand from its customers.  The Company has also aggressively opened new stores in both semi-rural and more densely populated geographies.  In addition, the Company has begun to compete more directly with larger retailers that sell flooring products, including Lowes, Home Depot and Lumber Liquidators.

4.     On November 15, 2017, the Company conducted a secondary offering of 6.5 million shares of its common stock at $36.00 per share to be sold by certain stockholders of the Company.  The November 15, 2017 secondary offering closed on or around November 20, 2017.

5.     On May 3, 2018, the Company issued a press release announcing its financial results for the first quarter of fiscal 2018, ended March 29, 2018.  The financial results beat the Company's reported revenue and earnings expectations and the Company also ***increased its financial projections for the remainder of fiscal 2018***:

**Floor & Decor Holdings, Inc. Announces First Quarter
Fiscal 2018 Financial Results**

\*      \*      \*

Floor & Decor Holdings, Inc. ("We," "Our" the "Company," or "Floor & Decor") announces its financial results for the first quarter of fiscal 2018, which ended March 29, 2018.

Tom Taylor, Chief Executive Officer, stated, "We are very pleased with our results in the first quarter that once again demonstrate the positive response customers have to Floor & Decor's highly differentiated, multi-channel, hard surface flooring and accessories business. ***Sales were above our expectations, and when combined with strong store execution and cost controls, we grew our adjusted diluted EPS 100%***.

\*      \*      \*

For the Thirteen Weeks Ended March 29, 2018

- Net sales increased 31.1% to $402.9 million from $307.3 million in the first quarter of fiscal 2017.  Comparable store sales increased 15.6% . . . .

\*      \*      \*

- Operating income increased 61.0% to $36.5 million from $22.7 million in the first quarter of fiscal 2017. Operating margin increased 170 basis points to 9.1%.

- Net income increased 186.4% to $31.9 million compared to $11.1 million in the first quarter of fiscal 2017. Diluted EPS was $0.30 compared to $0.13 in the first quarter of fiscal 2017.

6.     The Company increased the comparable store sales and earnings per share ("EPS") guidance as follows:

|  | Prior Guidance Twelve Months Ended 12/27/2018 | Updated Guidance Twelve Months Ended 12/27/2018 |
|---|---|---|
| Net sales | $1,690 - $1,730 | $1,705 - $1,735 |
| Comparable store sales | 8.5% to 11.5% | 9.5% to 11.5% |
| Adjusted diluted EPS | $0.91 - $1.00 | $0.93 - $1.01 |

7.     On the same day, May 3, 2018, the Company held a conference call for analysts and investors to discuss its first quarter 2018 financial results.  The call was hosted by defendants Lang and Taylor.  During the call, defendants discussed current sales and business trends and the Company's **basis for the increase in its financial guidance for the remainder of 2018**:

> [Lang:]  Now turning to our guidance.  As you saw from our press release, we're raising our sales and adjusted EPS guidance for the year *following a very strong first quarter*.  A few points I want to make about our outlook.  First, for fiscal 2018, we continue to expect our comparable store sales, excluding Houston, to be in the high single digits to low double digits and for the Houston benefit to moderate as we move throughout the year.  Second, our outlook now **assumes a modest decline in gross margin for fiscal 2018**.
>
> *     *     *
>
> [Analyst:]  And just sort of a general cadence, not only within the quarter but relative to last year.  There's been some modest moderation in the underlying growth rate in the market.  So can you talk about was that – is that sort of like broadly felt across the categories?  Or is it any particular category standout?  You did see some nice ticket improvement in this quarter.  Was there any sort of stand out on the cadence within the first quarter as well?

[Taylor:]  No.  Not, not really.  The trends have been relatively consistent, so ***the businesses that have grown at a faster rate continue to be the same businesses as we've seen in the previous quarters.  So we haven't seen anything from a category perspective***.

8.     On May 3, 2018, following the announcement of the Company's first quarter 2018 financial results, UBS issued a report on Floor & Decor entitled "Quick Thoughts on 1Q'18 Results":

**Quick Thoughts on 1Q'18 Results**

FND reported 1Q adj. EPS of $0.26 vs. the consensus of $0.23 (UBSe $0.22) FND's reported comp of 15.6% was above our estimate of 15.0% (cons. 15.5%).  Notably, post-hurricane demand in Houston boosted its comp by 400 bps (vs. 800 bps in 4Q).  Its multi-year stacks decelerated a bit. But, FND's 3-yr & 4-yr stack comp were stable after adjusting for the hurricane benefits the past two quarters.  We think this demonstrates that core ***demand trends remained strong during the quarter***.

\*     \*     \*

The company updated its FY'18 outlook and provided 2Q guidance FND expects a 2Q comp of 11-13%, which amounts to a 2-yr stack of 27% at its midpoint.  This implies its multi-year stacks will be steady with 1Q. Its 2Q EPS guidance range of $0.23-0.25 (cons. est. of $0.30) suggests considerable margin degradation of about -170 bps.  This probably reflects the 4 warehouse openings and some investment timing.  ***For the full-year, FND increased the low end of its comp guidance range to 9.5- 11.5% (from 8.5-11.5%)***, demonstrating more confidence in its outlook.   Further, its new EPS guidance range of $0.93-$1.01 (from $0.91-$1.00) flows through some of the beat from 1Q. We think a beat-and-raise story will be well received by the market.

9.     Despite the Company's strong first quarter 2018 financial results and the increase in the Company's fiscal 2018 outlook, some market analysts expressed disappointment that the sales outlook had not been increased even more.

10.     On May 3, 2018, Floor & Decor's stock price declined from a close of $54.05 per share on May 2, 2018 to $46.56 per share on May 4, 2018.

11.     On May 9, 2018, J.P. Morgan issued a report on Floor & Decor discussing its meeting with Company executives, including defendants Taylor and Lang.  The report reiterated the strength of Floor & Decor's business, shot down any rumors that the Company had missed internal financial plans during the first quarter of 2018, encouraged investors to add to their positions on the current "pullback" in the Company's share price, and set a $59.00 price target for the Company's shares:

> *We hosted FND management yesterday* in NYC *including CEO Tom Taylor, CFO and EVP, Professional Services, Trevor Lang, and Manager of IR, Matt McConnell*.  Net-net, we continue to see FND as a rare growth story and would use the pullback in the stock to add to/build positions and are thus reiterating our OW rating ($59 Dec 18 price target = 29% upside).
>
> Key points/conclusions from our meetings include: (1) *contrary to what some investors have heard, FND categorically did not fall short* of their internal plan in 1Q.
>
> *      *      *
>
> *Best in market value prop; no shift in geographical or category trends*; pricing structure intact.

- 6 -

12.     On May 23, 2018, the Company filed a Registration Statement and Rule 424(b) Prospectus with the SEC for a secondary offering of 10 million shares of Floor & Decor common stock at $44.77 per share, which became effective on or around May 23, 2018.   On May 25, 2018, the Company filed a Prospectus Supplement with the SEC for the May 24, 2018 secondary offering ("May 24 Secondary Offering").[1]   The Registration Statement incorporated the Company's historical financial performance and growth prospects and purported to warn investors that there were certain risks that, "*if*" they occurred, "*could*" cause the Company's financial results to be adversely affected.   In fact, certain of the risks were already materializing.

13.     On May 29, 2018, the Company filed a Form 8-K with the SEC announcing the closure of the May 24 Secondary Offering.   The Form 8-K attached the underwriting agreement between the Company and J.P. Morgan and assured investors that as of the effective date (May 23, 2018) and the closing date (May 29, 2018), the Registration Statement did not contain any untrue statements of material fact or omit to state any material facts required to be stated therein or necessary to

---

[1]     The Registration Statement, Prospectus and Prospectus Supplement are referred to herein collectively as the "Registration Statement."

make the statements therein, in light of the circumstances under which they were made, not misleading:

> Each of the Registration Statement and any post-effective amendment thereto, ***at the time of its effectiveness, complied and will comply in all material respects with the requirements of the 1933 Act and the 1933 Act Regulations***. Each preliminary prospectus, the Prospectus and any amendment or supplement thereto, at the time each was filed with the Commission, complied and will comply in all material respects with the requirements of the 1933 Act and the 1933 Act Regulations . . . .
>
> . . . ***Neither the Prospectus nor any amendment or supplement thereto***, ***as of its issue date, at the time of any filing with the Commission pursuant to Rule 424(b)***, ***at the Closing Time***, included, includes or will include an untrue statement of a material fact or omitted, omits or will omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

14.     The May 24 Secondary Offering raised more than $400 million for the "Selling Stockholders."  Including the sales in the May 24 Secondary Offering, and as the Company's stock price increased to above $55.00 per share thereafter, Company insiders unloaded more than 10.3 million shares of Floor & Decor common stock for proceeds of more than $466 million.

15.     Each of the statements in the Registration Statement filed with the SEC regarding the current financial condition of the Company, including the purported risk warnings associated with the purchase of the Company's stock, was materially false and misleading because the Company knew, but failed to disclose, that prior to

the May 24 Secondary Offering, the Company had already begun to experience declining sales trends that would ultimately result in the reduction of its fiscal 2018 sales and adjusted EPS guidance, which had been increased as recently as May 2018. The Registration Statement failed to disclose this material information, disclosure of which was required by SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"). Item 303 requires disclosure of any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.

16. Then, on August 2, 2018, before the market opened, Floor & Decor issued a press release announcing its financial results for the second quarter of 2018. The second quarter results were in sharp contrast to the assurances made on May 3, 2018 about the strength of the Company's business and its continuing growth trajectory for the remainder of 2018.

17. The Company reduced its fiscal 2018 comparable store sales and EPS outlook as follows:

|  | **Prior Outlook** | **Updated Outlook** |
|---|---|---|
|  | Twelve Months Ended 12/27/2018 | Twelve Months Ended 12/27/2018 |
| Net sales | $1,705 - $1,735 | $1,696 - $1,710 |
| Comparable store sales | 9.5% to 11.5% | 9.0% to 10.0% |

| Adjusted diluted EPS | $0.93 - $1.01 | $0.93 - $0.96 |
|---|---|---|

18.    Following the issuance of the August 2, 2018 press release, the Company held a conference call for analysts and investors to discuss its disappointing financial results.  In addition to reiterating the Company's second quarter 2018 financial results and its sharply reduced financial guidance, the Company's CFO explained the declining sales trends, which purportedly had begun in May 2018 after the announcement of the Company's first quarter 2018 financial results and had continued thereafter.  During the call, defendant Lang explained:

> [Lang:]  So this is Trevor, again. So when we gave guidance, our April comps were in line with what we gave guidance at that time.  We obviously knew what our results were at that point.  So you're right, the back part, ***after the earnings release, is when our business slowed a bit. And it's been pretty consistent subsequent to that***.

19.    As a result of these disclosures and the significant reduction in the Company's fiscal year 2018 sales and EPS outlook, Floor & Decor's stock price declined more than 21%, from a close of $47.71 per share on August 1, 2018 to a close of $37.50 per share on August 3, 2018.

## JURISDICTION AND VENUE

20.    Jurisdiction is conferred by §27 of the Exchange Act (15 U.S.C. §77aa) and 28 U.S.C. §§1331 and 1337.  The claims asserted herein arise under §§10(b) and

20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

21.   Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District.  The Company's shares are traded on the New York Stock Exchange ("NYSE").

22.   In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mail, telephonic communications and the facilities of the NYSE.

## PARTIES

23.   Plaintiff Grant Taylor purchased Floor & Decor common stock as described in the certification attached hereto as Exhibit A and was damaged thereby.

24.   Defendant Floor & Decor Holdings, Inc. is a Delaware corporation with its principal place of business located in Smyrna, Georgia.

25.   Defendant Thomas V. Taylor, Jr. ("Taylor") is and was at all relevant times the Company's CEO and has been a member of the Company's Board of Directors since December 2012.  Taylor signed the May 23, 2018 Registration Statement.

26.    Defendant Trevor S. Lang ("Lang") is and was at all relevant times Executive Vice President, CFO and Chief Accounting Officer of the Company. Lang signed the May 23, 2018 Registration Statement.

27.    Defendant Ares Opportunities Fund III, L.P. ("Ares") and its affiliated entities were selling stockholders in the May 24 Secondary Offering and are controlling shareholders of the Company.  Ares nominated Norman H. Axelrod, David B. Kaplan, Peter M. Starrett, Rachel H. Lee and Felicia D. Thornton to be directors of the Company.[2]

28.    Defendant FS Capital Partners VI, LLC, as the general partner of defendants FS Equity Partners VI, L.P. and FS Affiliates VI, L.P. (the "FS Funds"), including Freeman Spogli Management Co., L.P., were among the selling stockholders in the May 24 Secondary Offering and are controlling shareholders of the Company.

29.    Defendant Freeman Spogli Management Co., L.P. ("Freeman Spogli") is a private equity firm dedicated exclusively to investing and partnering with

---

[2]    Each of the directors signed the May 23, 2018 Registration Statement.  In addition, many of them held controlling positions in or relevant affiliations with the Controlling Defendants (defined below).  Kaplan is a founder and member of the Board of Directors of Ares Partners and an affiliate of Ares.  Starrett is a founder of Peter Starrett Associates, which provides consulting services to certain Freeman Spogli Management Co., L.P. affiliated entities.  Lee was a manager of Ares.

— reserved

management in consumer and distribution companies in the United States.  Freeman Spogli nominated John M. Roth[3] and Brad J. Brutocao[4] to be directors of the Company.

30.    Defendants Taylor and Lang are collectively referred to herein as the "Individual Defendants."

31.    Defendants Ares, the FS Funds and Freeman Spogli are collectively referred to herein as the "Controlling Defendants."

## CONTROL PERSONS

32.    As officers and/or directors and controlling persons of a publicly held company whose common stock is traded on the NYSE and governed by the provisions of the federal securities laws, the defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to

---

[3]    Roth signed the May 23, 2018 Registration Statement.  Roth is also a managing member of FS Capital Partners VI, LLC and a principal of certain Freeman Spogli affiliated entities.

[4]    Brutocao signed the May 23, 218 Registration Statement.  Brutocao is also a managing member of FS Capital Partners VI, LLC and a principal of certain Freeman Spogli affiliated entities.

correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's common stock would be based upon truthful and accurate information.   The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

33.     Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom and of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with Floor & Decor, defendants had access to the adverse undisclosed information about the Company's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Floor & Decor and its business or adopted by the Company materially false and misleading.

34.     The Individual Defendants and Controlling Defendants, because of their positions of control and authority as officers and/or directors of the Company or their share ownership and rights emerging from an Investor Rights Agreement, were able to and did control the content of the various SEC filings, press releases

and other public statements pertaining to the Company during the Class Period.[5] Defendants were provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly,

---

[5]    The Registration Statement filed in connection with the Company's IPO on April 24, 2017 describes the power of Ares and the FS Funds (and Freeman Spogli) and their control over Floor & Decor, including their rights to appoint directors and officers to the Company as follows:

> Pursuant to the terms of the Investor Rights Agreement, each Sponsor is entitled to nominate (a) five directors for election to our board of directors for so long as it holds 40% or more of our outstanding common stock, (b) three directors for election to our board of directors for so long as it holds 30% or more of our outstanding common stock, (c) two directors for election to our board of directors for so long as it holds 15% or more of our outstanding common stock and (d) one director for election to our board of directors for so long as it holds 5% or more of our outstanding common stock. In particular, Ares has nominated Messrs. Axelrod, Kaplan and Starrett and Mses. Lee and Thornton for election to our board of directors, and Freeman Spogli has nominated Messrs. Brutocao and Roth for election to our board of directors. Pursuant to the terms of the Investor Rights Agreement, each Sponsor will agree to vote in favor of the other Sponsor's nominees and for the election of our then-current chief executive officer to our board of directors, and subject to any applicable securities exchange or equivalent listing requirements, we will agree to take all necessary and desirable actions to support the election of such director nominees, including soliciting proxies in favor of such nominees, at each annual or special meeting of our stockholders called for the election of directors.

defendants are responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

35.    The Company and the Individual Defendants, by disseminating materially false and misleading statements and/or concealing material adverse facts, are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Floor & Decor common stock.  The scheme: (i) deceived the investing public regarding Floor & Decor's business, operations, management and the intrinsic value of Floor & Decor common stock; and (ii) caused plaintiff and other members of the Class (as defined herein) to purchase Floor & Decor common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

36.    On May 23, 2018, Floor & Decor announced that it would conduct a secondary offering of 10 million shares of its Class A common stock to be sold by the "Selling Stockholders," including defendants Ares, the FS Funds and Freeman Spogli:

**Floor & Decor Holdings, Inc. Announces Secondary Offering of 10,000,000 Shares of Common Stock by Selling Stockholders**

. . . Floor & Decor Holdings, Inc. (the "Company" or "Floor & Decor") (NYSE:FND) today announced that funds affiliated with Ares Management, L.P. and Freeman Spogli Management Co., L.P. (collectively, the "Selling Stockholders") intend to offer for sale in an

- 16 -

underwritten secondary offering 10,000,000 shares of common stock of the Company.

*       *       *

An automatic shelf registration statement (including a prospectus) relating to these securities was filed on May 23, 2018 with the Securities and Exchange Commission (the "SEC") and became effective upon such filing.

37.     On May 23, 2018, the Company filed the Registration Statement and Prospectus for the May 24 Secondary Offering with the SEC.  The Registration Statement discussed the Company's business and described the common stock offering, the selling stockholders and the Company's value proposition based upon its historical financial performance and sales growth.  In addition, the Registration Statement purported to warn investors of certain risks, including, for example, failure to achieve market success, regulatory or political developments, or general market conditions that could impact the Company's financial results:[6]

Some of the key factors that ***could*** cause actual results to differ from our expectations include the following:

• an overall decline in the health of the economy, the hard surface flooring industry, consumer spending and the housing market;

---

[6]     The Registration Statement also incorporated by reference the Company's Annual Report on Form 10-K for the year ended December 28, 2017, its Quarterly Report on Form 10-Q for the quarter ended March 29, 2018, and its May 18, 2018 Form 8-K.

- any disruption in our distribution capabilities resulting from our inability to operate our distribution centers going forward;

- competition from other stores and internet-based competition;

- our failure to execute our business strategy effectively and deliver value to our customers;

\* \* \*

- our dependence on foreign imports for the products we sell;

\* \* \*

- our failure to successfully anticipate consumer preferences and demand.

38. On May 24, 2018, the Company announced that it had priced the May 24 Secondary Offering of common stock at $44.77 per share and referred investors to the Company's Prospectus, which was filed with the SEC and had become effective on May 23, 2018. The Company also stated that the offering was expected to close on May 29, 2018.

39. On May 29, 2018, the Company filed a Form 8-K with the SEC announcing the closure of the May 24 Secondary Offering. The Form 8-K attached the underwriting agreement between the Company and J.P. Morgan Securities LLC ("J.P. Morgan"). The Form 8-K and the attached underwriting agreement assured investors that, as of the effective date (May 23, 2018) and the closing date (May 29,

2018), the Registration Statement did not contain any untrue statements of material fact or omit to state any material facts required to be stated therein or necessary to make the statements made herein, in light of the circumstances under which they were made, not misleading:

Each of the Registration Statement and any post-effective amendment thereto, *at the time of its effectiveness, complied and will comply in all material respects with the requirements of the 1933 Act and the 1933 Act Regulations*. Each preliminary prospectus, the Prospectus and any amendment or supplement thereto, at the time each was filed with the Commission, complied and will comply in all material respects with the requirements of the 1933 Act and the 1933 Act Regulations . . . .

Accurate Disclosure. *Neither the Registration Statement nor any amendment thereto, at its effective time, on the date hereof or at the Closing Time, contained, contains or will contain an untrue statement* of a material fact or omitted, omits or will omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. *Neither the Prospectus nor any amendment or supplement thereto*, *as of its issue date, at the time of any filing with the Commission pursuant to Rule 424(b)*, *at the Closing Time*, included, includes or will include an untrue statement of a material fact or omitted, omits or will omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

\*       \*       \*

No Material Adverse Change in Business. Except as otherwise stated therein, since the date of the most recent financial statements in the Registration Statement, the General Disclosure Package or the Prospectus, (A) *there has been no material adverse change, or any development that could reasonably be expected to involve a*

*prospective material adverse change, in the condition, financial or otherwise, or in the earnings, management, business affairs or business prospects of the Company* . . . .

40.     Between May 29, 2018 and June 18, 2018, insiders and certain of the Controlling Defendants unloaded more than 10.3 million shares of Floor & Decor stock at prices as high as $55.03 per share in connection with the May 24 Secondary Offering and thereafter:

| Filer Name | Transaction Date | Price | Shares Sold | Proceeds |
|---|---|---|---|---|
| Ares | 5/29/18 | $44.77 | 6,734,007 | $301,481,493 |
| | | | **6,734,007** | **$301,481,493** |
| FS Equity Partners VI, L.P. | 5/29/18 | $44.77 | 3,265,993 | $146,218,507 |
| | | | **3,265,993** | **$146,218,507** |
| Lisa Laube | 6/18/18 | $54.33 | 41,181 | $2,237,364 |
| | 6/18/18 | $55.01 | 18,819 | $1,035,233 |
| | | | **60,000** | **$3,272,597** |
| Brian K. Robbins | 6/26/18 | $50.00 | 17,044 | $852,200 |
| | | | **17,044** | **$852,200** |
| Taylor | 6/18/18 | $55.03 | 36,525 | $2,009,971 |
| | | | **36,525** | **$2,009,971** |
| Vincent West | 6/18/18 | $54.46 | 91,952 | $5,007,706 |
| | 6/18/18 | $54.99 | 75,986 | $4,178,470 |
| | 6/19/18 | $53.70 | 66,738 | $3,583,831 |
| | 6/19/18 | $54.49 | 5,327 | $290,105 |
| | | | **240,000** | **$13,060,111** |
| | | | | |
| **Grand Total:** | | | **10,353,569** | **$466,894,879** |

41.     Each of the statements in the Registration Statement and May 29, 2018 Form 8-K filed with the SEC regarding the current financial condition of the

Company, including the purported risk warnings associated with purchase of the Company's stock, was materially false and misleading because the defendants knew, but failed to disclose, that, prior to the May 24 Secondary Offering, the Company had already begun to experience declining sales trends that would ultimately result in the reduction of its fiscal 2018 sales and EPS guidance, which had been increased as recently as May 2018.  The Registration Statement failed to disclose this material information, disclosure of which was required by Item 303.  Item 303 requires disclosure of any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.

### THE TRUE FACTS BEGIN TO BE REVEALED

42.    Then, on August 2, 2018, before the market opened, Floor & Decor issued a press release announcing its financial results for the second quarter of 2018. The Company's second quarter results were in sharp contrast to the assurances made on May 3, 2018 about the strength of the Company's business and its continuing growth trajectory for the remainder of 2018:

**Floor & Decor Holdings, Inc. Announces Second Quarter Fiscal 2018 Financial Results**

- Net sales increased 26.2% from second quarter 2017 to $434.3 million

- Comparable store sales increased 11.4% from second quarter 2017

- Diluted earnings per share ("EPS") increased 90.0% to $0.38 from $0.20 in the second quarter 2017; Adjusted diluted EPS increased 35.0% to $0.27 from $0.20 in the second quarter 2017

- ***Provides third quarter and updates full year fiscal 2018 sales and earnings outlook***

    . . . Floor & Decor Holdings, Inc. ("We," "Our" the "Company," or "Floor & Decor") announces its financial results for the second quarter of fiscal 2018, which ended June 28, 2018.

**For the Thirteen Weeks Ended June 28, 2018**

- Net sales increased 26.2% to $434.3 million from $344.0 million in the second quarter of fiscal 2017. Comparable store sales increased 11.4%, including an estimated 280 basis point benefit from post-hurricane demand in Houston.

- Operating income increased 9.2% to $37.2 million from $34.1 million in the second quarter of fiscal 2017.

- Net income increased 95.0% to $39.8 million compared to $20.4 million in the second quarter of fiscal 2017. Diluted EPS was $0.38 compared to $0.20 in the second quarter of fiscal 2017.

43. The Company reduced its fiscal year 2018 comparable store sales and

EPS outlook as follows:

|  | **Prior Outlook** | **Updated Outlook** |
|---|---|---|
|  | Twelve Months Ended 12/27/2018 | Twelve Months Ended 12/27/2018 |
| Net sales | $1,705 - $1,735 | $1,696 - $1,710 |
| Comparable store sales | 9.5% to 11.5% | 9.0% to 10.0% |

| Adjusted diluted EPS | $0.93 - $1.01 | $0.93 - $0.96 |
|---|---|---|

44.   Following the issuance of the August 2, 2018 press release, the Company held a conference call for analysts and investors to discuss the Company's disappointing financial results.  In addition to reiterating the Company's second quarter financial results and its sharply reduced financial guidance, defendants explained the declining sales trends, which had begun in May 2018 after the announcement of the Company first quarter 2018 results and had continued thereafter.  During the call, defendants explained:

[Lang:]   Before turning the call over to Trevor, I want to acknowledge the revision we provided to our full year outlook.  We complete a thorough forecast each quarter, and we felt it prudent to slightly adjust our guidance based on current trends and uncertainty due to lapping unprecedented hurricane impact on our stores last year.

\*      \*      \*

[Taylor:]   Now turning to our guidance.  As you saw from our press release, given our performance for the first half of the year and our expectation for the remainder of 2018, we are revising our 2018 annual guidance range as a result of the following 3 factors.  ***First, we expect our comparable store sales, excluding Houston, to be 9% to 10.5% range for the second half of 2018, reflecting recent trends in our business.***  Second, we have had some stores opening later than we'd original plan in the fourth quarter.  ***And third and final, due to the reduction of sales expectations, combined with lower assumed product margins***, primarily due to anticipated mix changes and domestic freight costs, we now expect gross margins to be down 50 to 60 basis points for the second half of the year.

- 23 -

45.     During the call, in response to analyst inquiries into when the Company

had begun to see the decelerating sales trends, defendants acknowledged they had

started to see a decline *in May 2018*:

> [Analyst:]  So the cadence of the year has decelerated.  So you should
> hit a peak in terms of the underlying ex weather trend in the fourth
> quarter.  And you back that out, it decelerated. . . .  So can you talk
> about how the cadence has been over the first half of the year?  I know
> you don't like to talk about when you see the decelerating trend, it's
> something that investors care about.
>
> *       *       *
>
> [Lang:]  So this is Trevor, again. So when we gave guidance, our
> April comps were in line with what we gave guidance at that time. We
> obviously knew what our results were at that point. So you're right, the
> back part, *after the earnings release, is when our business slowed a*
> *bit. And it's been pretty consistent subsequent to that*.

46.     Also during the call, in response to questions about profit margins

flattening or declining, defendants, without providing many details, allowed that

some of their products, including laminate flooring, were lower margin than others,

such as installation materials (which are complimentary to wood or tile, but not

laminate, flooring), and suggested that their "mix" of products had shifted from the

latter to the former, hurting margins:

> [Lang:]  As you look at the strongest businesses we have this year with
> our laminate business and our LVP business, those – some of those
> categories are lower margin. And because some of those categories also
> have things like underlayment included in them, it affects some of our

installation accessories where we were not selling as much underlayment and stuff.

47.    On August 3, 2018, following the announcement of the Company's second quarter 2018 results, J.P. Morgan issued a report discussing the Company's results and stating specifically that the declining business trends had begun in May 2018.  The report also noted the Company's surprising "[s]tory [s]hift" during the conference call:

### Downgrading to Neutral on Story Shift; Stock Likely in Purgatory Until 2019

*Following a disappointing 2Q and lowered guidance, we are downgrading FND to Neutral*. In our view, the stock story has shifted and, despite the 15% decline in the stock Wednesday, it remains at a premium valuation (35x our 2019 EPS estimate) that could further contract.

\*       \*       \*

*Key points/conclusions from our conversation with management. (1) Comp trends were running a "bit better" than the 2Q guide of 11-13% when guidance was issued on the 1Q call on 5/2. Trends decelerated into May and then stayed relatively flat through July* . . . .

48.    On August 3, 2018, the Telsey Advisory Group issued a report on the Company and its second quarter results, indicating that the disappointing results and the guidance cut were unexpected, though also concluding that the disclosures did "not completely change the story":

FND – **Sales Slowed but Story Not Broken; Maintain Outperform**

- 25 -

**TAG VIEW**: *Floor & Decor missed comp expectations for the first time and lowered its full year sales and EPS outlook to the lower end of the prior range. While the slowdown and guidance cut were unexpected, they were modest and in our view do not completely change the story*.  Floor & Decor cited slower growth in the flooring category, some headwinds from housing (higher interest rates and lower turnover), and difficult YoY comparisons as reasons for the sales guidance revision.

**Incremental Details from the Call**: All categories, including laminate luxury vinyl plank, decorative accessories, and insulation materials generated a positive comp in 2Q18, with the exception of natural stone. *However, the company saw trends decelerate and cited three reasons for its lowered EPS guidance: 1) a core comp guide of 9.0%-10.5% in 2H18 ex. Houston, implying an acceleration from 8.6% in 2Q18 as more new stores enter the comp; 2) a decline in the gross margin of 50-60 bps in 2H18 due to product mix shift (less installation materials and accessories) and higher freight costs; and 3) several stores opening later than planned in 4Q18.*

49.    As a result of these disclosures, including the reduction in the Company's guidance, which had been increased as recently as May 2018, Floor & Decor's stock price declined more than 21%, from a close of $47.71 per share on August 1, 2018 to a close of $37.50 per share on August 3, 2018, on massive volume of more than 7 million and 4 million shares traded on August 2, 2018 and August 3, 2018, respectively.

50.    The market for Floor & Decor common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and omissions, as set forth above, Floor & Decor common stock traded

at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased Floor & Decor common stock relying upon the integrity of the market price of Floor & Decor common stock and market information relating to Floor & Decor, and have been damaged thereby.

51.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Floor & Decor common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

52.    At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Floor & Decor's business and prospects.  These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Floor & Decor and its business and prospects, thus causing the Company's common stock

- 27 -

to be overvalued and its price to be artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of Floor & Decor common stock was removed and the price of Floor & Decor common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

53.     As alleged herein, Floor & Decor and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, these defendants, by virtue of their receipt of information reflecting the true facts regarding Floor & Decor, their control over, and/or receipt and/or modification of Floor & Decor's allegedly materially misleading statements and/or their associations with the

Company which made them privy to confidential proprietary information concerning Floor & Decor, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION/ECONOMIC LOSS

54.     During the Class Period, as detailed herein, defendants made false and misleading statements about Floor & Decor's business and prospects and engaged in a scheme to deceive the market.  This artificially inflated Floor & Decor's stock price and operated as a fraud or deceit on the Class.  Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the market, Floor & Decor's stock price fell precipitously, as the prior artificial inflation came out of the stock price.  As a result of their purchases of Floor & Decor common stock during the Class period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

55.     Floor & Decor's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles, including those filed with the SEC

on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.  15 U.S.C. §78u-5(b)(2)(A).

56.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Floor & Decor who knew that the FLS was false.  None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

57.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's common stock traded in an efficient market;

(d)    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

(e)    Plaintiff and other members of the Class purchased Floor & Decor common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

58.    At all relevant times, the market for Floor & Decor common stock was efficient for the following reasons, among others:

(a)    As a regulated issuer, Floor & Decor filed periodic public reports with the SEC; and

(b)    Floor & Decor regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased Floor & Decor common stock during the Class Period (the "Class").  Excluded from

the Class are defendants and their families, directors and officers of Floor & Decor,

at all relevant times, and their immediate families, and defendants' legal

representatives, heirs, successors, or assigns and any entity in which defendants have

or had a controlling interest.

60.     The members of the Class are so numerous that joinder of all members

is impracticable.  The disposition of their claims in a class action will provide

substantial benefits to the parties and the Court.  Floor & Decor has more than 98

million shares of stock outstanding, owned by hundreds of persons.

61.     There is a well-defined community of interest in the questions of law

and fact involved in this case.  Questions of law and fact common to the members

of the Class that predominate over questions that may affect individual Class

members include:

(a)     whether the Exchange Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material

facts;

(c)     whether defendants' statements omitted material facts necessary

in order to make the statements made, in light of the circumstances under which they

were made, not misleading;

(d)    whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)    whether the price of Floor & Decor common stock was artificially inflated; and

(f)    the extent of damage sustained by Class members and the appropriate measure of damages.

62.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

63.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

64.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the Exchange Act and Rule 10b-5
### Against the Company and the Individual Defendants

65.    Plaintiff incorporates ¶¶1-64 by reference.

66.    During the Class Period, the Company and the Individual Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations

and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67.    The Company and the Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes and artifices to defraud;

(b)    Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Floor & Decor common stock during the Class Period.

68.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Floor & Decor common stock.  Plaintiff and the Class would not have purchased Floor & Decor common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

69.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Floor & Decor common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against the Company, the Individual Defendants,
### and the Controlling Defendants

70.     Plaintiff incorporates ¶¶1-69 by reference.

71.     The Individual Defendants and the Controlling Defendants acted as controlling persons of Floor & Decor within the meaning of §20 of the Exchange Act.  By virtue of their positions and their power to control public statements about Floor & Decor, the Individual Defendants and Controlling Defendants had the power and ability to control the actions of Floor & Decor and its employees.  Floor & Decor controlled the Individual Defendants and the Controlling Defendants and its other officers and employees.  By reason of such conduct, these defendants are liable pursuant to §20(a) of the 1934 Act.

- 35 -

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  May 20, 2019        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                   JOHN C. HERMAN
                                    (Georgia Bar No. 348370)

                                      *John C. Herman*
                                            JOHN C. HERMAN

                                    Monarch Tower, Suite 1650
                                    3424 Peachtree Road, N.E.
                                    Atlanta, GA  30326
                                    Telephone:  404/504-6500
                                    404/504-6501 (fax)
                                    jherman@rgrdlaw.com

                                    ROBBINS GELLER RUDMAN
                                      & DOWD LLP
                                    SHAWN A. WILLIAMS
                                    (Of Counsel)
                                    Post Montgomery Center
                                    One Montgomery Street, Suite 1800
                                    San Francisco, CA  94104
                                    Telephone:  415/288-4545
                                    415/288-4534 (fax)
                                    shawnw@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
  (Georgia Bar No. 262062)
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

Attorneys for Plaintiff