# EXHIBIT A

**2020 WL 2111947**
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007.
See also U.S. Ct. of App. 11th Cir. Rule 36-2.
United States Court of Appeals, Eleventh Circuit.

Thomas W. LUCZAK, Plaintiff-Appellant,
v.
NATIONAL BEVERAGE CORP., George R.
Bracken, Nick A. Caporella, Defendants-Appellees.

No. 19-14081
|
Non-Argument Calendar
|
(May 4, 2020)

**Attorneys and Law Firms**

Leigh M. Handelman Smollar, Pomerantz, Chicago, IL,
Marshall Pierce Dees, Corey Holzer, Holzer & Holzer, LLC,
Atlanta, GA, Frank S. Hedin, Hedin Hall, LLP, Miami, FL,
for Plaintiff-Appellant

Amy J. Eldridge, Lacey A. Gehm, Nicholas George Terris,
K & L Gates, LLP, Washington, DC, Daniel A. Casey,
Jeffrey Thomas Kucera, K & L Gates, LLP, Miami, FL, for
Defendants-Appellees

Appeal from the United States District Court for the Southern
District of Florida, D.C. Docket No. 0:18-cv-61631-KMM

Before MARTIN, GRANT, and TJOFLAT, Circuit Judges.

**Opinion**

PER CURIAM:

**\*1** Thomas W. Luczak, on behalf of himself and all others
who bought or otherwise acquired securities of National
Beverage Corp. ("National Beverage" or the "Company"),
alleges securities fraud against National Beverage and two of
its officers. The district court dismissed Luczak's complaint
for failure to plead that any material misstatement or
omission by the defendants violated § 10(b) of the Securities
Exchange Act of 1934 (the "Exchange Act"). After careful

consideration, we affirm in part and reverse and remand in
part.

## I.

A. FACTUAL BACKGROUND
In reviewing the district court's decision to dismiss Luczak's
amended complaint—which we refer to as the "complaint"
unless otherwise specified—"we must accept the facts
pleaded as true and construe them in a light favorable to
[Luczak]." See Little v. City of North Miami, 805 F.2d 962,
964 (11th Cir. 1986) (per curiam).

National Beverage sells a portfolio of flavored beverage
products, including LaCroix sparkling waters, throughout
North America and the rest of the world. Its stock trades
on the NASDAQ under the ticker symbol "FIZZ." National
Beverage is a family-controlled corporation, with defendant
Nick A. Caporella, the Company's CEO and Chairman,
controlling 73.5% of the common stock. The other individual
defendant, George R. Bracken, is National Beverage's
Executive Vice President of Finance.

The asserted class period began on July 17, 2014, when
National Beverage filed its annual report for the fiscal quarter
and year ending May 3, 2014. From this point forward, the
complaint alleges the defendants caused four materially false
and misleading categories of statements to be made, two of
which are relevant on appeal.

First, Luczak says National Beverage made misleading
statements regarding velocity per outlet ("VPO") and
velocity per capita ("VPC"), two sales metrics the Company
purportedly touted as "an important measure of growth and
sales." The complaint points to three mid-2017 press releases
in which National Beverage discussed VPO and VPC in
the context of positive sales. Luczak alleges these press
releases falsely claimed VPO and VPC were unique or
proprietary, and that the statements were intended to drive
the Company's value up. On January 26, 2018, the SEC
wrote to National Beverage asking the Company to explain
VPO and VPC. National Beverage responded that VPO and
VPC are "proprietary methods" but that the Company does
not use them "to manage the overall executional side of
[the] business." The SEC responded on March 23, noting
inconsistency between this description of VPO and VPC with
the Company's earlier statements in the press releases. The
next day, National Beverage's share price dropped $4.82,

closing at $82.83. On June 26, the Wall Street Journal published an article detailing exchanges between the SEC and National Beverage. The article said that "National Beverage declined to provide the requested figures" regarding these metrics to the SEC. The next day, the Company's share price dropped $9.75, closing at $100.19. This allegation is referred to as the "VPO/VPC" claim.

**\*2** Luczak also says that National Beverage failed to disclose that Caporella engaged in a pattern of sexual misconduct between 2014 and 2016. National Beverage's code of ethics, which the Company referred to in its 2014, 2015, and 2016 Form 10-Ks, says "[a]ny type of harassment, whether of a racial, sexual, or other nature, is absolutely prohibited." However, Luczak says this was not true. He points to a July 3, 2018 article in the Wall Street Journal, which reported that two private-jet pilots accused defendant Caporella of inappropriately touching them during more than 30 trips between 2014 and 2016. Over the two trading days after these allegations were reported, National Beverage's share price fell $2.90, or 2.64%. This allegation is referred to as the "sexual harassment" claim. [1]

B. PROCEDURAL HISTORY

Luczak filed his original complaint on July 17, 2018. On October 12, 2018, the district court granted Luczak's motion for appointment as lead plaintiff and approval of class counsel. Luczak then filed an amended complaint on November 2, 2018. In his amended complaint, Luczak seeks to hold all defendants liable for violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5(b). He also seeks to hold Bracken and Caporella liable under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

A month later, the defendants moved to dismiss the complaint. The defendants urged the court to dismiss Luczak's claims for failure to allege falsity, scienter, and loss causation, all of which are elements of a Rule 10b-5 claim. The defendants also claimed Luczak lacks standing because he has not alleged a personal loss and that he cannot bring claims based on misrepresentations made before his first purchase or after his last purchase of Company shares.

The district court granted the motion to dismiss. See Luczak v. Nat'l Beverage Corp., 400 F. Supp. 3d 1318, 1333 (S.D. Fla. 2019). First, the court rejected the defendants' arguments as to standing. However, the court dismissed the entirety of the complaint for failure to state a claim. Relevant to this appeal, the court dismissed both the VPO/VPC and sexual harassment claims for failure to allege loss causation. In light of the court's dismissal of Luczak's claims for "primary liability under § 10(b)," it dismissed his "secondary" claims under § 20(a) as well.

## II.

A. THE EXCHANGE ACT

Section 10(b) of the Exchange Act prohibits the "use or employ, in connection with the purchase or sale of any security ... [, of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). One such rule, Rule 10b-5, makes it unlawful for "any person," in connection with the purchase or sale of a security, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). There is an implied private right of action for investors under Rule 10b-5. Carvelli v. Ocwen Fin. Corp., 934 F.3d 1307, 1317 (11th Cir. 2019).

**\*3** To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege:

> (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called "loss causation."

Id. (quotation marks omitted). Luczak's allegations fall under the "fraud-on-the-market theory," which "allows us to presume 'that an investor relies on public misstatements whenever he buys or sells stock at the price set by the market.'" Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., 762 F.3d 1248, 1254 (11th Cir. 2014)

(quoting Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 811, 131 S. Ct. 2179, 2185, 180 L.Ed.2d 24 (2011)).

If a plaintiff cannot state a claim for securities fraud under § 10(b) and Rule 10b-5, his "control-person" claims under § 20(a) "necessarily fail as well." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

B. PLEADING REQUIREMENTS

"To survive a motion to dismiss, a claim brought under Rule 10b-5 must satisfy (1) the federal notice pleading requirements; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b); and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ('PSLRA')." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation omitted).

Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "For purposes of this analysis, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat, 658 F.3d at 1296 (quotation marks omitted).

Under Rule 9(b), complaints alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." FindWhat, 658 F.3d at 1296.

Finally, "[t]he PSLRA imposes additional heightened pleading requirements on Rule 10b-5 actions." Id. For Rule 10b-5 claims predicated on allegedly false or misleading statements or omissions, the PSLRA requires the complaint to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). "[I]f an allegation regarding the statement or omission is made on information and belief," the

complaint must "state with particularity all facts on which that belief is formed." Id.

**\*4** Our circuit has never taken a position on whether the PSLRA's heightened pleading standards apply to allegations of loss causation. We need not resolve that question in this case because we conclude that Luczak has alleged loss causation with regard to his VPO/VPC claim even under the heightened pleading standards of Rule 9(b) and the PSLRA, although he has not alleged loss causation with regard to his sexual harassment claim even under Rule 8(a)(2)'s notice pleading requirement.

C. STANDARD OF REVIEW

We review de novo the dismissal of a securities fraud complaint for failure to state a claim. See Mizzaro, 544 F.3d at 1236; Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118, 1120 (11th Cir. 2006).

### III.

This appeal primarily concerns the loss causation element. To show loss causation, "a plaintiff must offer proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." Meyer v. Greene, 710 F.3d 1189, 1195 (11th Cir. 2013) (quotation marks omitted); see 15 U.S.C. § 78u-4(b)(4) (requiring the plaintiff to prove that the alleged act or omission "caused the loss for which the plaintiff seeks to recover damages"). The plaintiff must show that the defendant's fraud was the proximate cause of the alleged loss. See FindWhat, 658 F.3d at 1309. "However, the plaintiff need not show that the defendant's misconduct was the sole and exclusive cause of his injury; he need only show that the defendant's act was a substantial or significant contributing cause." Id. (quotation marks omitted) (quoting Robbins v. Koger Props., Inc., 116 F.3d 1441, 1447 (11th Cir. 1997)).

Although loss causation can be difficult to prove in fraud-on-the-market cases like this one, a plaintiff can demonstrate loss causation circumstantially by:

> (1) identifying a "corrective disclosure" (a release of information that reveals to the market the pertinent truth that was previously concealed or

obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a "substantial" amount of the price drop.

FindWhat, 658 F.3d at 1311–12 (footnote omitted). "A corrective disclosure can come from any source, and can take any form from which the market can absorb the information and react, so long as it reveals to the market the falsity of the prior misstatements." Id. at 1311 n.28 (alterations adopted) (citations and quotation marks omitted). Although a disclosure "need not precisely mirror the earlier misrepresentation" in order to have a corrective effect, "it must at least relate back to the misrepresentation and not to some other negative information about the company." Meyer, 710 F.3d at 1197 (quotation marks omitted). A corrective disclosure can be established by a single disclosure or a series of partial disclosures. Id.; see also Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342–43, 125 S. Ct. 1627, 1631–32, 161 L.Ed.2d 577 (2005) (allowing for the possibility that the "relevant truth" regarding the defendant's actions could "leak out" through partial disclosures). In order to plead loss causation premised on a series of partial disclosures, the complaint "must state facts that show (1) those disclosures gradually revealed to the market the undisclosed truth about [the defendant's fraudulent practice], and (2) such disclosures resulted in the decline of [the defendant's] share price." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 472–73 (4th Cir. 2011); see Meyer, 710 F.3d at 1197.

 **\*5** We conclude Luczak has sufficiently alleged loss causation for his VPO/VPC claim but not his sexual harassment claim. Because he has also pled falsity, materiality, and scienter for the VPO/VPC claim, we reverse the district court's dismissal of that claim.

## A. VPO/VPC CLAIM

Luczak's allegations of loss causation for the VPO/VPC claim rely on two documents he says were partial corrective disclosures: the March 23, 2018 Letter from the SEC to National Beverage (the "March 23 letter"), and a June 26, 2018 article in the Wall Street Journal entitled "The SEC Has Had Its Own Questions About LaCroix" (the "June 26 article"). The district court concluded these documents were not corrective disclosures and dismissed the complaint for failure to plead loss causation. We reverse that decision and reinstate Luczak's Rule 10b-5 claim premised on these allegations.

### 1. The March 23 Letter

VPO and VPC were brought to the SEC's attention in 2017, when National Beverage issued several press releases discussing how the Company "utilize[s] two proprietary techniques to magnify [VPO and VPC] and this creates growth never before thought possible." In January 2018, the agency asked National Beverage to "discuss[ ] ... these measures" or explain why the Company did not believe disclosure of the basis for these metrics was necessary. National Beverage responded by refusing to disclose the basis for VPO and VPC, which it said were "proprietary methods." The Company also said these metrics "are used to establish goals for certain customers, but are not utilized to manage the overall executional side of [its] business." Then came the March 23 letter, in which the SEC said:

> We note your response that the VPO and VPC metrics are not used to manage the execution side of your business and are not key performance indicators. However, we note the statement that you "utilize" two proprietary techniques to magnify these measures, which "creates growth never before thought possible." We also note the statement in your press release furnished May 8, 2017 that an "impressive VPO calculator that was reflected on the cover of our fiscal year 2015 Proxy is flashing solid green numbers as we bring FY2017 to a close." Please provide an expanded response that explains the VPO and VPC metrics and reconciles [these statements] with the statement that VPO and VPC are not utilized to manage your business and are not key performance indicators.

Luczak says the March 23 letter was "the first time [the market learned] that the Company issued conflicting statements" regarding its VPO and VPC metrics "and that the SEC was still confused and inquiring into the issue." Luczak also says the March 23 letter informed the market "that the Company was failing to cooperate with the SEC." [2]

## 2. The June 26 Article

The June 26 article discussed National Beverage's press releases and the public letters between the SEC and the Company. Most relevant to Luczak's claim of loss causation, the June 26 article contained the following line: "In correspondence with the agency disclosed in those filings, National Beverage declined to provide the requested [VPO/VPC] figures." According to Luczak, the June 26 article "provided the market with a full realization that Defendants' claims about the VPO and VPC metrics were misleading."

## 3. Loss Causation Analysis

**\*6**  The district court dismissed the VPO/VPC claim on the ground that neither the March 23 letter nor the June 26 article "reveal[ed] to the market the pertinent truth that was previously concealed or obscured by the company's fraud." Luczak, 400 F. Supp. 3d at 1330 (alteration in original) (quoting FindWhat, 658 F.3d at 1311). The court said the March 23 letter "merely confirms the SEC's already established doubt of the veracity of the relevant VPC/VPO statements." Id. at 1331 (alteration adopted and quotation marks omitted). The court also disagreed with Luczak's characterization of the March 23 letter as having "accused National Beverage of failing to cooperate" with the SEC. Id. The district court further rejected Luczak's use of the June 26 article as a corrective disclosure, saying Luczak does not allege the article contained any new information "beyond a summary of the already existing correspondence between National Beverage and the SEC." Id.

We first agree with Luczak that the district court failed to analyze his complaint as alleging a series of partial disclosures. The court erred in finding the March 23 letter could not serve as a corrective disclosure because "it does not constitute either 'proof of fraud' or 'proof of liability.' " Id. (quoting Sapssov v. Health Mgmt. Assocs., Inc., 608 F. App'x 855, 863 (11th Cir. 2015) (per curiam) (unpublished)). Luczak alleges the March 23 letter and the June 26 article cumulatively disclosed National Beverage's allegedly fraudulent practices. He does not therefore need to allege the March 23 letter alone shows proof of fraud. See Katyle, 637 F.3d at 472–73 (stating that a partial disclosure theory is established by showing that disclosures "gradually revealed to the market the undisclosed truth" about defendant's fraudulent practices).

The district court also erred in its separate analysis of both documents. Regarding the March 23 letter, it was improper for the court to reject Luczak's reading of the letter and find that "the SEC never accused National Beverage of failing to cooperate." Luczak, 400 F. Supp. 3d at 1331. While a court "is not bound to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits," Michel v. NYP Holdings, Inc., 816 F.3d 686, 707 (11th Cir. 2016), no contradiction exists here. Before the March 23 letter, the SEC had already requested sales information and explained it was having difficulty "reconcil[ing]" the Company's previous statements with its most recent letter to the agency. Given this background, it was plausible for Luczak to construe the March 23 letter as showing National Beverage's "fail[ure] to cooperate with the SEC and refus[al] to give it the information requested regarding sales." The district court's reading of the March 23 letter was too narrow at this stage in the proceedings. This would be so even if Rule 9(b)'s heightened pleading standard applied, given that Luczak's allegations are sufficiently specific so as to "enable the [district] court to evaluate whether the necessary causal link exists." See Katyle, 637 F.3d at 471 (quotation marks omitted); see also Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., 945 F.3d 1150, 1159 (11th Cir. 2019) (setting forth this circuit's standard for pleading under Rule 9(b)).

Both the district court and the defendants characterize the June 26 article as a "mere[ ] summar[y] of the earlier correspondence between the Company and the SEC staff." Br. of Appellees at 19; see Luczak, 400 F. Supp. 3d at 1331. But this is not a fair reading of the article, nor of Luczak's allegations. As Luczak points out in the complaint, the article says only, "National Beverage declined to provide the requested figures." The June 26 article does not specify that this information was gleaned only from the March 23 letter, so the district court should not have drawn this conclusion. In addition, it is difficult to square the district court's contention that the March 23 letter does not show National Beverage's refusal to comply with SEC requests with the court's finding that the June 26 article only summarized the March 23 letter. The June 26 article does not specify to which "filings" it was referring. It was not proper for the district court to assume, at the motion to dismiss stage, that the June 26 article's use of the word "filings" meant the March 23 letter or any other public correspondence between the Company and the SEC.

**\*7** Luczak's complaint alleges the defendants' fraudulent behavior leaked out through a series of partial disclosures, causing a drop in the stock price. Because we find Luczak pled loss causation for the VPO/VPC claim through a "corrective disclosure" theory, we need not reach his "materialization of the risk" argument.

### 4. Other Elements

The district court dismissed Luczak's VPO/VPC claim for failure to plead loss causation. Because of this dismissal, the court did not analyze whether the VPO/VPC statements were materially misleading or made with scienter. The defendants urge us to affirm the district court on one of these alternative bases. We decline to do so.

#### a.. Overview

"Rule 10b-5 prohibits not only literally false statements, but also any omissions of material fact 'necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.' " FindWhat, 658 F.3d at 1305 (quoting 17 C.F.R. § 240.10b-5(b)). "A statement is misleading if in the light of the facts existing at the time of the statement a reasonable investor, in the exercise of due care, would have been misled by it." Id. (alterations adopted) (quotation marks omitted). A securities fraud plaintiff has the burden of showing an alleged misstatement was material. See SEC v. Morgan Keegan & Co., 678 F.3d 1233, 1249 n.20 (11th Cir. 2012) (per curiam). In addition, the plaintiff must "plead 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." Mizzaro, 544 F.3d at 1238 (quoting 15 U.S.C. § 78u-4(b)(2)).

Both materiality and scienter are mixed questions of law and fact that must typically be resolved by the factfinder. See SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 (11th Cir. 2007). A court may not dismiss a securities fraud complaint on the basis of materiality unless the alleged misrepresentations are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Carvelli, 934 F.3d at 1320 (quotation marks omitted). A plaintiff's allegations of scienter must only be "at least as compelling [to a reasonable person] as any opposing inference one could draw from the facts alleged" in order to survive a motion to dismiss. Brophy v. Jiangbo Pharms., Inc., 781 F.3d 1296, 1302 (11th Cir. 2015) (quotation marks omitted).

#### b. Falsity

The complaint sufficiently alleges false statements made by the defendants. Luczak says National Beverage claimed on three specific occasions in 2017 that VPO and VPC were exclusive metrics and that the Company used "proprietary techniques" to interpret them. The complaint also alleges that the corrective disclosures informed the market that VPO and VPC "were not used to manage the business nor were they key performance indicators." The complaint then states with particularity why these statements were supposedly false: pointing to the 2018 corrective disclosures, Luczak alleges "the metrics were not a proprietary, the metrics did not create growth opportunities," and "the supposed underlying 'proprietary techniques' lacked a verifiable basis and were not important metrics used to determine sales." It may well be that Luczak is wrong on all fronts, as the defendants claim. But that is for the finder of fact to decide after discovery.

**\*8** The defendants also say Luczak's complaint is deficient because his allegations of falsity as to the VPO/VPC claim are based in part on statements by confidential witnesses. In Mizzaro, this Court recognized that a court can give less weight "to allegations based on statements proffered by a confidential source depend[ing] on the particularity of the allegations made in each case." 544 F.3d at 1240. The Court went on to say that confidentiality "should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame." Id. Luczak's complaint satisfies this standard. It identifies each confidential witness's job, the time the witness spent in that job, and the relevance of the witness's job to the VPO/VPC allegations. The defendants offer a number of reasons to doubt the credibility of the allegations supported by these confidential witnesses. Again, the defendants may well turn out to be right, but it is improper to weigh the evidence in this way on a motion to dismiss.

#### c. Materiality

These alleged misrepresentations were material. The May 4, 2017 press release said National Beverage's treatment of the VPO and VPC metrics "creates growth never before thought possible." The next day, a statement attributed to Caporella said the Company's "impressive VPO calculator" indicated "solid green numbers as we bring FY2017 to a close." The June 2, 2017 press release similarly connected the VPO and VPC calculations to the Company's fiscal health. These are far from the "generalized, vague, nonquantifiable statements of corporate optimism" that constitute nonactionable puffery, as defendants claim. See Carvelli, 934 F.3d at 1319. National Beverage's statements expressed optimism, but they did so by citing to specific strategies and metrics the company said it was using. Cf. Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1028 (11th Cir. 2003) (per curiam) (collecting caselaw on puffery and stating that "the characterization of a company's performance as 'strong' constitutes mere puffery"). Luczak has alleged that a reasonable investor could have relied on these statements.

### d. Scienter

The defendants say that Luczak's reliance on confidential witnesses is also fatal to his claim of scienter. In order for statements from a confidential witness to raise a strong inference of scienter, the statements "must be described with sufficient particularity to establish [the witness's] reliability and personal knowledge" and the statements "must themselves be indicative of scienter." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 995 (9th Cir. 2009); see Mizzaro, 544 F.3d at 1247–48 ("[T]he weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case, and confidentiality is one factor that courts may consider. Confidentiality, however, should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge....").

We have discussed how the allegations in Luczak's complaint are sufficiently particular. The complaint also satisfies the "indicative of scienter" requirement because the statements by confidential witnesses regarding VPO and VPC make it at least as likely as not that the defendants acted with scienter in discussing these metrics in 2017. Confidential Witness ("CW") 1 said "the VPC and VPO metrics were not used at National Beverage" and that they were "likely ... made up by Defendant Caporella." Similarly, CW2 said National

Beverage's management never discussed VPO or VPC during conference calls or meetings and that none of the Company's annual and quarterly reports contained information about VPO or VPC. Finally, CW4 said that "never once during CW4's tenure working exclusively with LaCroix did anyone mention the VPC metric." If these allegations are true, they would provide evidence of the defendants' recklessness or knowing falsity in saying National Beverage's positive financial results were confirmed by VPO and VPC. See Institutional Inv'rs Grp. v. Avaya, Inc., 564 F.3d 242, 270 (3d Cir. 2009) (concluding plaintiffs alleged scienter where allegations from confidential witnesses contradict statements "directly and repeatedly" made by corporate officer defendant).

### B. SEXUAL HARASSMENT CLAIM

**\*9** Luczak says his complaint pleads loss causation for the sexual harassment claim through his identification of the July 3, 2018 Wall Street Journal article (the "July 3 article") as a corrective disclosure. He argues the July 3 article informed investors that the defendants "had omitted material information regarding their policies," specifically "that the most senior officer charged with enforcing the prohibition on sexual harassment ... was himself accused as a perpetrator." Br. of Appellant at 28, 30. The district court dismissed the sexual harassment claim on the ground that the July 3 article was a "mere repackaging of already-public information," namely allegations in two lawsuits filed over a year before the July 3 article was published. See Luczak, 400 F. Supp. 3d at 1332 (quoting Meyer, 710 F.3d at 1199).

A document is not per se barred from being a "disclosure" simply because it discusses information that was already available to the public. When a lawsuit has not been discussed in any news article or regulatory filings, the suit's first mention in this type of setting can, in certain circumstances, constitute a disclosure. Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 435 (2d Cir. 2008). "It would be unreasonable" for courts to expect ordinary investors to become aware of "a lawsuit filed in an unlikely venue ..., that received no publicity whatever ... and that did not ... result in published or broadly disseminated opinions within the relevant time period." Id. This Court's opinion in Meyer endorsed the same idea in the context of loss causation. There, the Court clarified that "corrective disclosures must present facts to the market that are new." 710 F.3d at 1197–98 (alteration adopted) (quotation marks omitted). If a document discusses only information of which the market is already aware—including "public filings and other

publicly available information"—it "is simply insufficient to constitute a corrective disclosure." Id. at 1198–99.

Luczak has not sufficiently pled that the harassment lawsuits against Caporella were news to the market when the July 3 article was published. As the district court observed, the pleadings mentioned in the July 3 article were publicly accessible on the date of the article's publication. Not only that, both cases were filed in the same court as Luczak's action and yielded dispositive, publicly accessible orders before the July 3 article was published. [3] Luczak does not contend otherwise.

We also reject Luczak's contention that the July 3 article contained new information through its publication of a statement that one of the plaintiffs in those actions stood by his allegations "100%" and that Caporella's behavior "was definitely inappropriate." This statement reveals no "previously concealed truth." FindWhat, 658 F.3d at 1311 n.28.

Because the July 3 article did not "present facts to the market that are new, that is, publicly revealed for the first time," the district court did not err in dismissing the sexual harassment claim for failure to plead loss causation. [4] See Meyer, 710 F.3d at 1197–98 (quotation marks omitted).

## IV.

**\*10** To summarize, we hold that the district court properly dismissed Luczak's sexual harassment claim but that it erred in dismissing his VPO/VPC claim for failure to satisfy the elements of Rule 10b-5. We therefore reverse the dismissal of his securities-fraud VPO/VPC claim and vacate the dismissal of his § 20(a) control-person claim based on those allegations.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART.**

### All Citations

--- Fed.Appx. ----, 2020 WL 2111947

Footnotes

1    Luczak also alleged that National Beverage violated generally accepted accounting principles by failing to disclose "the Company's vulnerability from its outsized concentration of revenues in LaCroix"; and that various National Beverage statements concerning the natural ingredients in LaCroix were fraudulent because "LaCroix was not 100% natural as the Company had claimed." The district court dismissed the claims based on these allegations. Luczak does not challenge their dismissal on appeal.

2    The district court assumed the truth of Luczak's allegation that the March 23 letter was public before the next trading day, as do we. See Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).

3    See Huenefeld v. Nat'l Beverage Corp., No. 16-CV-62881, 2017 WL 4838786 (S.D. Fla. Oct. 24, 2017); Citrullo v. Nat'l Beverage Corp., No. 17-CV-60225, 2017 WL 9360857 (S.D. Fla. Oct. 11, 2017). A court may take judicial notice of the existence of documents filed in related judicial proceedings. Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239, 1243 (11th Cir. 1991).

4    Luczak's opening brief on appeal does not make more than a "passing reference" to the materialization-of-the-risk theory in the context of his sexual harassment claim, so we deem this argument waived. See Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1345 (11th Cir. 2017).

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.