IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE FLOOR & DECOR HOLDINGS,
INC. SECURITIES LITIGATION

CIVIL ACTION FILE NO.

1:19-CV-2270 -SCJ

## ORDER

This matter appears before the Court on Defendants' Motion to Dismiss

Plaintiff's Second Amended Complaint for Violation of the Federal Securities

Laws (Doc. No. [59]).[1]

## I. BACKGROUND

On November 12, 2019, Lead Plaintiff, Oklahoma Law Enforcement

Retirement System ("Plaintiff"),[2] individually and on behalf of others persons

similarly situated, filed their Second Amended Complaint (SAC) in which they

_____

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers
are those imprinted by the Court's docketing software.

[2] Plaintiff states that it purchased Floor & Decor common stock during the Class Period.
Doc. No. [46], ¶ 16. The class has not yet been certified, but involves all persons who
purchased the common stock for Floor & Decor between May 23, 2018 and
August 1, 2018. Id. ¶ 2.

allege that Defendants,[3] violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), by making false and misleading statements and concealing material adverse facts concerning Floor & Decor Holdings, Inc.'s ("Floor & Decor" or the "Company") current financial condition and growth prospects. Doc. No. [46], ¶ 3. More specifically, Plaintiff alleges that Defendants materially misrepresented Floor & Decor's business condition existing as of May 23, 2018 and May 29, 2018. Doc. No. [46], ¶¶ 53, 55–58; see also Doc. No. [60], p. 12.

 Plaintiff's allegations regarding said dates are as follows.

 On May 23, 2018, Floor & Decor filed a Registration Statement ("RS"), Rule 424(b) Prospectus, and Prospectus Supplement with the United States Securities and Exchange Commission ("SEC") for a Secondary Public Offering ("SPO") of 10 million shares of Floor & Decor common stock. Doc. No. [46], ¶ 7. "The May 23, 2018 Registration Statement purported to warn investors of certain

---

[3] Defendants are: Floor & Decor, the Company's President and Chief Executive Officer ("CEO"), Thomas V. Taylor, Jr. ("Taylor"), its Chief Financial Officer ("CFO"), Trevor S. Lang ("Lang"), and the Company's Controlling Stockholders, namely private equity funds affiliated with Ares Management Corporation ("Ares Management") and Freeman Spogli Management Co., L.P. ("Freeman Spogli"). Doc. No. [46], ¶ 2.

risks with generic risk warnings that Floor & Decor's stock price might be subject to wide price fluctuations because of [some key factors][4] but failed to disclose known and declining sales trends that had already materialized." Id. ¶ 53.[5]

On May 29, 2018, Floor & Decor filed a Form 8-K with the SEC and disclosed as an attached exhibit, its Underwriting Agreement with the SPO ("Underwriting Agreement). Id. ¶ 55. The Underwriting Agreement assured investors of Floor & Decor's representation to the Underwriter that Floor & Decor had complied with all material aspects of the Securities Act and the Securities Act

---

[4] The key factors listed in the SAC are:

> an overall decline in the health of the economy, the hard surface flooring industry, consumer spending and the housing market;
> * * *
> - our inability to manage our growth.
> * * *
> - actual or anticipated fluctuations in our quarterly or annual financial results;
> - the financial guidance we may provide to the public, any changes in such guidance or our failure to meet such guidance . . . .

Doc. No. [46], ¶ 53.

[55] Plaintiff also allege that the RS omitted certain material information that was required by SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), which requires disclosure of any and all material changes since a Company's most recent financial statement. Doc. No. [46], ¶ 60(b).

3

Regulations and its RS did not contain any untrue statements of material fact or omit to state any material facts. Id. ¶¶55–58.

As indicated above, Plaintiff alleges that the statements made in the Registration Statement and Underwriter Agreement were materially false and misleading because they failed to disclose that "[b]eginning in early May 2018 (weeks prior to the SPO) and staying consistent thereafter, the Company's sales trends slowed, constituting declining growth that would ultimately result in the reduction of FY18 net sales, comparable store sales and [earnings per share], which had all been increased as recently as May 3, 2018." Id. ¶¶60(a)–(b).

Plaintiff alleges that Defendants had "direct knowledge of, and access to, the sales trends when they issued their materially false and misleading statements." Id. ¶ 34. Plaintiff alleges knowledge of Defendants based on Floor & Decor's "advanced Corporate Performance Management software from Prophix [that] gave Defendants visibility into sales trends on a real-time basis by enabling the aggregation of large amounts of data into dashboards, and the consolidation of profit and loss statements into a single report." Id.

Plaintiff further alleges that "Defendants' misrepresentations and omissions [artificially] inflated Floor & Decor's stock price permitting the

4

Controlling Stockholders, the Individual Defendants and the Company executives to offload over 10.3 million shares, yielding gross proceeds for themselves of over $466 million. Doc. No. [46], ¶ 61.

On August 2, 2018, Defendants issued a press release announcing its 2Q18 financial results and lowered its FY18 financial guidance. Id. ¶ 63. Plaintiff states that CFO Lang "admitted on the earnings conference call with investors on the same day that slowing sales—including comparable store sales—had begun in May 2018, a fact known to the Company but not disclosed during the Class Period, and specifically not disclosed before or in the SPO on May 23, 2018." Id. ¶¶ 10, 67. "The August 2, 2018 disclosure caused Floor & Decor's stock price to [immediately] decline as the prior artificial inflation dissipated from Floor & Decor's stock price and investors absorbed the significance of the new information and its relationship to the alleged misrepresentations." Id. ¶77. Plaintiff states that it purchased Floor & Decor stock at artificially inflated priced during the Class Period and "suffered an economic loss, i.e., damages, when Floor & Decor's stock prices declined upon the disclosures correcting the alleged misrepresentations." Id. ¶ 79. As indicated above, this litigation followed.

On November 21, 2019, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint. Doc. No. [59].[6] On January 6, 2020, Plaintiff filed a response in opposition to the motion. Doc. No. [60]. On February 5, 2020, Defendant filed a reply brief. Doc. No. [61].[7]

The Court held oral argument on June 24, 2020. Doc. No. [70]. This matter is now ripe for review.

## II. LEGAL STANDARD

A "triple-layered pleading standard" applies to private securities plaintiffs. Carvelli v. Ocwen Fin. Corp., 934 F.3d 1307, 1317 (11th Cir. 2019). "To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b–5

---

[6] In support of their motion, Defendants seek judicial notice of eighteen exhibits. See generally Doc. Nos. [59-1], p. 9, n.2 and [59-2]. Plaintiff appears to only take issue with Exhibit 15 as inappropriate for judicial notice, because it is "subject to reasonable dispute" and "circumvents the page limit afforded to Defendants. Doc. No. [60], p. 16, n.4. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, 551 U.S. at 322–23 (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). After review, the Court deems it proper to take judicial notice of Defendants' Exhibits 1–14 and 16–18. The Court will exercise its discretion to consider Exhibit 15 so as to be consistent with its ruling in a prior case in which a similar chart was considered. See In re Aaron's, Inc. Sec. Litig., No. 1:17-CV-2270-SCJ (N.D. Ga. Sept. 26, 2018) (Jones, J.).

[7] Plaintiff filed a notice of supplemental authority on May 6, 2020. Doc. No. [67].

must satisfy not only the run-of-the-mill federal notice-pleading requirements [of Federal Rule of Civil Procedure 8(a)] . . . but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act [PSLRA] of 1995, 15 U.S.C. § 78u–4." Id. "Failure to meet any of the three standards will result in a complaint's dismissal." Id. (citations omitted).

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than

7

conclusions," [as] [c]onclusory allegations are not entitled to the assumption of truth. Id. (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiffs must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . .") and Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at

8

the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

"[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted).

As stated above, because Plaintiff asserts securities fraud claims against Defendants, Plaintiff must also satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). Federal Rule of Civil Procedure 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements

9

and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." <u>Mizzaro</u>, 544 F.3d at 1237 (citation omitted). In addition, the PSLRA, imposes a heightened pleading standard for scienter. <u>Id.</u> at 1238. Plaintiff must, "with respect to each act or omission alleged to violate [the relevant code section], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

"Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that a defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading, and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 321 (2007) (15 U.S.C. § 78u–4(b)(1) and (b)(2) (internal quotations omitted).

Lastly, the elements of the causes of action are as follows.

"Section 10(b) of the Securities Exchange Act of 1934 forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and

Exchange Commission 'rules and regulations.'" <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 341 (2005) (citing 15 U.S.C. § 78j(b)). "SEC Rule 10b–5 implements this provision by making it unlawful to, among other things, 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" <u>Matrixx Initiatives, Inc. v. Siracusano</u>, 563 U.S. 27, 37 (2011) (citing 17 CFR § 240.10b–5).

"In cases involving publicly traded securities and purchases or sales in public securities markets, the [private] action's basic elements [under § 10(b) of the Exchange Act and Rule 10b-5] include:  (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." <u>Dura Pharm.</u>, 544 U.S. at 341–42 (citations omitted).

"To state a claim under § 20(a) [for control person liability], [a plaintiff] must allege three elements: (1) that [the company defendant] committed a primary violation of the securities laws; (2) that the individual defendants had the power to control the general business affairs of [the company defendant]; and

11

(3) that the individual defendants 'had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability.'" Mizzaro, 544 F.3d at 1237. "Because a primary violation of the securities laws is an essential element of a § 20(a) derivative claim, [the Eleventh Circuit has] held that a plaintiff adequately pleads a § 20(a) claim only if the primary violation is adequately pleaded." Id. "Therefore, the pivotal issue in this case [is] whether [Plaintiff] adequately pleaded a violation of § 10(b) and Rule 10b–5." Id.

## III. ANALYSIS

The Court will assume (without deciding) that Plaintiff has sufficiently pled its allegations of misrepresentations and omissions and the absence of the application of the safe harbor.[8] Accordingly, the Court begins its analysis with the third ground of Defendants' motion, i.e., scienter.

---

[8] This assumption is with the exception of Plaintiff's SEC Regulation S-K, Item 303 claims. Doc. No. [46], pp. 32–33. As correctly stated by Defendants, "Plaintiff cannot avoid the Eleventh Circuit's holding that Item 303 does not create 'a duty of disclosure that, if violated, constitutes a material omission under . . . Rule 10b-5.'" Doc. No. [61], p. 16 (citing Carvelli v. Ocwen Fin. Corp., 934 F.3d 1307, 1331 (11th Cir. 2019)).

A. <u>Allegations of Scienter</u>

"[U]nder the PSLRA, the plaintiff must state with particularity facts giving rise to a 'strong inference' that the defendant acted with scienter." <u>In re Galectin Therapeutics, Inc. Sec. Litig.</u>, 843 F.3d 1257, 1275, n.10 (11th Cir. 2016) (citations omitted). In the Eleventh Circuit "[s]cienter consists of intent to defraud or 'severe recklessness' on the part of the defendant." <u>Id.</u> (citations omitted). "Severe recklessness is 'limited to those highly unreasonable omissions or misrepresentations that involve . . . an extreme departure from the standards of ordinary care' that are so likely to mislead that 'the defendant must have been aware of it.'" <u>Id.</u> (citations omitted).

"[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [i.e., scienter].  Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute. If these PSLRA pleading requirements are not satisfied, the court shall dismiss the complaint." <u>FindWhat Inv'r Grp. v. FindWhat.com</u>, 658 F.3d 1282, 1296–97 (11th Cir. 2011) (citations and internal quotations omitted).

13

"[A] complaint will survive [a motion to dismiss] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Brophy v. Jiangbo Pharm., Inc., 781 F.3d 1296, 1302 (11th Cir. 2015) (citing Tellabs, 551 U.S. at 324). "Although [the Court] draw[s] any reasonable inferences available on the face of the complaint in the investors' favor, [the Court] also must look to 'plausible, nonculpable explanations for the defendant's conduct' in evaluating an inference of scienter." Id.; see also Tellabs, 551 U.S. at 314 (holding that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.").

"The inquiry [after considering the complaint in its entirety]. . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322–23.

In deciding whether allegations of scienter are sufficient to survive a motion to dismiss, a court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter

14

at least as strong as any opposing inference?" <u>Mizzaro</u>, 544 F.3d at 1239. "In making this determination, the court must review 'all the allegations holistically.'" <u>Matrixx</u>, 563 U.S. at 48 (citations omitted).

The Court now considers whether Plaintiff's "allegations of scienter are sufficient to support a claim and whether scienter has been pled with appropriate particularity." <u>In re Sci.-Atlanta, Inc. Sec. Litig.</u>, 239 F. Supp. 2d 1351, 1365 (N.D. Ga. 2002), *aff'd sub nom.* <u>Phillips v. Sci.-Atlanta, Inc.</u>, 374 F.3d 1015 (11th Cir. 2004).

In the case *sub judice*, Defendants assert that "Plaintiff fails to sufficiently allege scienter," as "even assuming a false and misleading statement, the SAC falls far short of pleading the requisite 'intent to deceive, manipulate or defraud,' or 'severe recklessness.'" Doc. No. [59-1], pp. 8, 28.

### 1. *Knowledge of the Alleged Fraud*

#### a. <u>Contemporaneous knowledge</u>

The allegations of scienter concerning knowledge of Defendants is in the SAC ¶¶ 31–34. In these paragraphs, Plaintiff alleges that Defendants, through board memberships or executive and managerial positions, had "access to the adverse undisclosed information about the Company's financial condition and performance . . . [and] knew, or were severely reckless in not knowing, that these

adverse facts rendered the positive representations made by or about [the Company] and its business . . . materially false and misleading." Doc. No. [46], ¶ 31. Plaintiff also alleges that Defendants "participated in the drafting, preparation, dissemination and/or approval of the various documents and other communications alleged to be false and misleading" in the SAC. Id. ¶ 32. Plaintiff further alleges that "Defendants therefore had direct knowledge of, and access to, the sales trends when they issued" the statements at issue because of "access to analysis of operational and financial metrics, including real-time sales volumes, individual store performance, inventories, and profit margins" through the Company's Prophix system, which "gave Defendants visibility into sales trends on a real-time basis by enabling the aggregation of large amounts of data into dashboards, and the consolidation of profit and loss statements into a single report." Id. ¶ 34.

Defendants assert that Plaintiff "fails to provide any particularized allegations demonstrating how these particular Defendants had contemporaneous knowledge of [the] alleged fraud." Doc. No. [59-1], p. 28. Defendants further state that Plaintiff provides no particularized facts to support the inferential claim [i.e., that the Company's use of Prophix software gave

16

Defendants visibility into sales trends on a real-time basis], and omit what Defendants knew, how they knew it, and when they knew it. <u>Id.</u> at p. 29.

In response, Plaintiff asserts that Defendants' real-time monitoring of sales trends supports a strong inference of scienter. Doc. No. [60], p. 27. Citing paragraph 34 of the SAC, Plaintiff further asserts that "Defendants' assurances that they monitored sales metrics and trends in real time so they could react accordingly, establishes their admitted contemporaneous knowledge of the undisclosed deceleration when the misrepresentations were made." Doc. No. [60], p. 28. Plaintiff also references Defendant Lang's statement that "[w]e have the ability to look at every store by month, by week and by through the rest of the year." <u>Id.</u> at p. 29 (citing Doc. No. [46], ¶ 34).

After review of the SAC and the parties' arguments, the Court upholds Defendants' arguments and citations of authority as most in line with the heightened pleading standard applicable to this case.[9] The Court concludes that Plaintiff's allegations in the SAC lack particularized contemporaneous facts

_____

[9] In their briefing on this aspect of scienter, neither party was able to cite the Court to binding authority (only persuasive authority was cited); however, the Court finds Defendants' citation of persuasive authority to be most in line with the heightened pleading standard applicable to this case.

connecting Defendants to knowledge of the alleged fraud. More specifically, the Court agrees that Plaintiff has failed to allege what Defendants knew, how they knew it, and when they knew it. See In re Equifax Inc. Sec. Litig., 357 F. Supp. 3d 1189, 1236 (N.D. Ga. 2019) ("Plaintiff has not alleged 'which defendant knew what, how they knew it, or when' . . . .").

As stated in Konkol v. Diebold, Inc., 590 F.3d 390, 397–98 (6th Cir. 2009), *abrogated in part by* Matrixx, 563 U.S. 27.[10]

> "[F]raudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information." PR Diamonds, 364 F.3d at 688 (holding that the defendants' access to financial reports and control over public earnings statements were insufficient to support a finding of scienter absent more particular facts). The investors' complaint alleges access to information, but it lacks sufficiently detailed facts regarding the financial reports, how they were used, and their connection to the Defendants.
> . . . .
> The investors also claim that, in addition to the financial reports, [the company] used real-time data software to track its sales and revenue. Again, however, the

---

[10] See also Frank v. Dana Corp., 646 F.3d 954, 961 (6th Cir. 2011) (providing context for the partial abrogation and declining to follow the Konkol court's approach of sorting through each of the allegations individually before concluding with a collective approach in light of Matrixx and addressing the claims holistically).

> complaint fails to provide key information about this
> software. It does not, for example, explain what the
> software reflected and what would have been obvious
> to a reasonable person upon examining the software.
> Similarly, the complaint fails to connect this software to
> eight of the Defendants. As for the ninth Defendant, the
> complaint simply alleges that he "used" the software.

The Court recognizes that Plaintiff has cited persuasive authority[11] to the contrary and attempts to distinguish its SAC from the facts of <u>Konkol</u> as more particularized. As indicated above, in light of the heightened pleading standard applicable to this case, the Court aligns with the <u>Konkol</u> line of authority that holds that more information is needed in the pleading, i.e., the software's use and connection to the Defendants and what information Defendants actually received as opposed to merely drawing inferences from statements concerning access and the abilities of the Company's corporate performance management software. While Plaintiff is correct that its SAC is more particularized than the complaint in <u>Konkol</u>, Plaintiff's SAC is still deficient in terms of connection to Defendants, information actually received (as opposed to access and ability to receive information), and if a material negative trend would have been obvious to a

---

[11] <u>See</u> Doc. No. [60], p. 28.

reasonable person examining (or otherwise receiving information from) the software in the limited time period of May 3 to May 23 (or May 29) and with knowledge of the Company's historical performance. Cf. In re Coty Inc. Sec. Litig., No. 14-CV-919 (RJS), 2016 WL 1271065, at *7 (S.D. N.Y. Mar. 29, 2016) ("Assuming the truth of these facts, the decline in growth rate [in June] would have been almost contemporaneous with the IPO on June 13, 2013 — clearly an insufficient time period to establish a trend.").

### b. Admitted knowledge

Plaintiff also argues admitted knowledge on the part of Defendants. More specifically, Plaintiff states that "Floor & Decor's CFO, speaking on behalf of Floor & Decor, admitted that the Company knew of the decelerating sales trend following the 1Q18 earnings release which was on May 3, 2018." Doc. No. [60], p. 29. Plaintiff quotes Lang as follows: "[Lang:] [Y]ou're right . . . after the earnings release, is when our business slowed . . . [a]nd it's been pretty consistent subsequent to that." Doc. No. [60], p. 29; see also Doc. No. [46], ¶ 67.[12]

———————————————

[12] Defendants assert that Plaintiff has quoted a misleading snippet and omits Lang's reference to the "back part," for which the quote reads: "So you're right, the back part, after the [May 3] earnings release, is when our business slowed a bit." Doc. No. [61], p. 11. The SAC actually contains this language. Doc. No. [46], ¶ 67.

To the contrary, Defendants argue fraud by hindsight as "Plaintiff ignores that when Mr. Lang commented on August 2, he had the benefit of full financial results for the entire second quarter (including May–June), as well as one month of the third quarter (July)." Doc. No. [61], p. 11. After review, the Court agrees that reliance upon Lang's statement to support an inference of scienter is essentially fraud by hindsight and is not actionable. See In re HomeBanc Corp. Sec. Litig., 706 F. Supp. 2d 1336, 1360 (N.D. Ga. 2010) ("Plaintiff's reliance upon after-the-fact events . . . to support an inference that these and other earlier statements must have been intentionally misleading and made with scienter amounts to little more than fraud by hindsight, which is not actionable.").

## 2. *Stock Sales*

Additional allegations of scienter are found in the SAC in the paragraphs concerning stock sales by the controlling stockholders and other corporate insiders. Doc. No. [60], p. 33 (citing SAC, Doc. No. [46], ¶¶ 61–62. According to Plaintiff, "[i]n late May and mid-June 2018, as the Company's stock price increased, Company insiders unloaded more than 353,000 shares of Floor & Decor common stock alongside the 10 million shares sold by the Controlling Stockholders, collectively constituting proceeds of over $466 million." Doc. No.

[46], ¶ 62. The Complaint lists the following names and their shares sold: Defendant Ares, Defendant FS Equity Partners VI, L.P., Defendant Taylor, Non-Party Lisa Laube (Executive Vice President and Chief of Merchandising Officer), Non-Party Brian K. Robbins (Executive Vice President, Business Development Strategy), and Non-Party Vincent West (founder and Vice Chairman of the Board of Directors). Id.

In their motion to dismiss, Defendants assert that Plaintiff's stock sale allegations are not sufficient. Doc. No. [59-1], p. 30.

As stated by the Court in In re Equifax Inc. Sec. Litig., 357 F. Supp. 3d 1189, 1243–44 (N.D. Ga. 2019), "'[t]he timing of stock trades by insiders also may be relevant to inferring scienter.' 'Stock sales or purchases timed to maximize returns on nonpublic information weigh in favor of inferring scienter; the lack of similar sales weighs against inferring scienter.' 'To demonstrate the relevance of stock trades to the issue of scienter, a plaintiff 'bear[s] the burden of showing that sales by insiders were in fact unusual or suspicious in amount and in timing.' " (citations omitted).

The Eleventh Circuit has also held that: "[t]he complaint must allege some information about the insider's trading history for us to determine whether 'the

level of trading is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" <u>Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.</u>, 594 F.3d 783, 793 (11th Cir. 2010).

As correctly noted by Defendants, in the case *sub judice*, Plaintiff fails to provide information regarding trading history.[13] "As a result, there is no way to determine from the complaint that the sales of large numbers of shares is suspicious enough to add to an inference of scienter." <u>Id.</u> Accordingly, Plaintiff's allegations concerning stock sales is entitled to no weight in considering the question of scienter as in the absence of stock sales, Plaintiff's allegations only

_____

[13] Defendants also argue in the alternative that even in considering the stock sales, Plaintiff has pled no facts demonstrating why this Court should consider the sales of non-parties, Lisa Laube, Brian Robbins, and Vincent West. Doc. No. [59-1], p. 31. Defendants further assert that Defendant Taylor's sales were pursuant to a predetermined 10b5-1 plan, which negates any inference of scienter. <u>Id.</u> citing <u>Metzler Inv. GMBH v. Corinthian Colleges, Inc.</u>, 540 F.3d 1049, 1067 (9th Cir. 2008) ("Sales according to pre-determined plans may 'rebut [ ] an inference of scienter.'"). In response, Plaintiff makes arguments concerning prematurity, limited trading history, and timing relevance; however, without more, the Court is unable to uphold Plaintiff's arguments in light of the clear Eleventh Circuit authority holding that the trading history needs to be pled.

raise issue of motive and opportunity, which are insufficient alone to create a strong inference of scienter. Id.; see also In re Theragenics Corp. Sec. Litig., 105 F. Supp. 2d 1342, 1361 (N.D. Ga. 2000) (citations omitted) ("If the [p]laintiffs rely upon stock sales, they must allege facts showing that the stock sales were unusual or out of the ordinary. Plaintiffs' allegations raise only issues of motive and opportunity, which the Eleventh Circuit and this Court previously have held are insufficient alone to create a strong inference of scienter.").

### 3. *More Compelling Inference*

"[A] complaint will survive [a motion to dismiss] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Brophy, 781 F.3d at 1302 (citing Tellabs, 551 U.S. at 324). "Although [the Court] draw[s] any reasonable inferences available on the face of the complaint in the investors' favor, [the Court] also must look to 'plausible, nonculpable explanations for the defendant's conduct' in evaluating an inference of scienter." Id.; see also Tellabs, 551 U.S. at 314 (holding that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."). "The inquiry [after considering

24

the complaint in its entirety]. . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322–23.

Defendants assert that the more compelling inference is one of non-fraudulent intent, i.e., "that Defendants conducted a 'thorough [re-]forecast' with the benefit of an additional five weeks of actual results from the second quarter (indeed, the full quarter's results, plus July) to analyze and prepare for the August 2018 earnings release and 'felt it prudent to slightly adjust' the high and low ends of its annual guidance." Doc. No. [59-1], p. 33 (citing Doc. No. [59-19], p. 3). The Court agrees and upholds Defendants' arguments to this regard. "Ultimately, [this Court holds] that the allegations contained in the complaint do not create an inference of scienter that is at least as probable as a non-fraudulent explanation . . . . The section 10(b) and Rule 10b–5 claims . . . fail because they lack sufficient allegations of scienter." Edward J. Goodman Life Income Tr., 594 F.3d at 793.

### B. <u>Control Persons</u>

"Because [Plaintiff] failed to adequately plead a violation of § 10(b) and Rule 10b–5 by [the company defendant/individual defendants], its § 20(a) control-person claims against the individual defendants necessarily fail as well." <u>See</u> <u>Mizzaro</u>, 544 F.3d at 1255.

## IV. CONCLUSION

Defendants' Motion to Dismiss the Second Amended Complaint for Violation of the Federal Securities Laws (Doc. No. [59]) is **GRANTED.** Nothing further remaining for the Court's consideration, the Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 21st day of September, 2020.

<u>s/Steve C. Jones</u>
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

26